**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SATISH MARISWAMY,

                    Petitioner,                    Case Number: 2:08-cv-14576

v.                                       HONORABLE NANCY G. EDMUNDS

MILLICENT WARREN,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS**
**CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner Satish Mariswamy has filed a petition for a writ of habeas corpus under

28 U.S.C. § 2254.  Petitioner, who is currently incarcerated at the Thumb Correctional

Facility in Lapeer, Michigan, challenges his conviction for first-degree premeditated

murder.  Petitioner claims that his attorney was ineffective, his confession was obtained

in violation of his right to remain silent and was the product of an illegal arrest, and that

his conviction violates the Hague Treaty.  For the reasons set forth below, the Court

denies the petition and denies a certificate of appealabilty.

**I.**

      Petitioner's conviction arises from the murder of Vijay Bulla at his home in Ann

Arbor, Michigan on October 13, 1999.  Police were called to the scene by Bulla's wife,

who arrived home at approximately 7:00 p.m. to find her husband lying in the hallway

surrounded by blood, and the home in disarray.  Police went to neighbor Vermuri

Naresh's residence at approximately 10:00 p.m.  They found Naresh and Petitioner there.
Both men were asked to go to the police station where they were photographed and
fingerprinted.

Several days later, Petitioner told several people that he, not Bulla's wife, had been
the first person to see the body of Bulla.  Those people brought him to the police station.
Petitioner advised Detective Hamid Sheikh that he had information regarding a homicide.
Detective Sheikh observed that Petitioner was on the verge of tears and blurted out that he
had actually been the one to fine Bulla's body.  Petitioner stated that he had planned to
visit his friend, but when he arrived at Bulla's door, it was open.  Petitioner saw Bulla
sprawled on the ground.  He thought that Bulla had a heart attack.  Petitioner entered the
apartment to attempt to revive Bulla.  After tapping Bulla's cheeks to try to revive him,
Petitioner realized Bulla was bleeding profusely and that his own hands were then bloody.
Petitioner panicked, believing that he would be suspected of murder.  He emptied drawers
and attempted to make it look like someone burglarized the apartment.  Petitioner denied
being involved in the murder.

Detective Sheikh testified that when he interviewed Petitioner a second time,
Petitioner admitted to killing Bulla.  Petitioner visited Bulla's apartment complex, where
he intended to call upon a friend, Bulla's neighbor, Vermuri Naresh.   Naresh was not
home, but he saw Bulla carrying boxes into his home.  Petitioner was well-acquainted
with Bulla, having lived with Bulla and his wife for two months when Petitioner entered
the United States from India.  Petitioner stated that he and Bulla began arguing.  Bulla

2

insulted Petitioner's mother and Petitioner, in turn, hurled insults at Bulla.  According to Petitioner's statement, Bulla picked up a wrench and hit him on the head with it. Petitioner was able to wrestle the wrench from Bulla and began striking Bulla with it. Bulla grabbed a computer cord and swung the cord at Petitioner.  Petitioner wrestled the computer cord from Bulla and began strangling him.  Petitioner stated that he became exhausted using the cord and decided to use a knife, which he used to slash Bulla's throat. Petitioner ransacked the home to create the appearance of a robbery.  He then fled, discarding bloody clothing and items he had taken from the apartment.  Petitioner later led police to these items.

Dr. Bader Cassin, Washtenaw County Medical Examiner, testified that he performed an autopsy on Bulla.  Dr. Cassin determined that the manner of death was homicide.  Dr. Cassin testified that Bulla lost a copious amount of blood from his injuries, including from a wound to the top of his head.  Dr. Cassin identified two distinct injuries which, each by itself, could have caused Bulla's death.  The first was multiple blunt-force injuries to the head.  The other was a cut to the front of Bulla's neck.

## II.

Following a jury trial in Washtenaw County Circuit Court, Petitioner was convicted of first-degree premeditated murder.  On May 24, 2000, he was sentenced to life in prison.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised these claims through counsel:

3

I.      Did the police have probable cause to arrest and question the defendant and thus were all statements made by the defendant after the Miranda warnings were given suppressible as a violation of the Fourth Amendment and was counsel ineffective for failing to object to the illegal arrest.

II.     Whether defense counsel was constitutionally ineffective for failing to prepare and present the defense of self-defense, for abandoning the defense mid-trial, and for failing to request the imperfect self-defense instruction.

III.    Whether Mr. Mariswamy's constitutional rights to due process and the right to counsel were violated by the use of admissions made after requests to contact counsel were ignored and the totality of the circumstances rendered his statements involuntary.

Petitioner raised these claims in a *pro per* supplemental brief:

I.      Defendant's Fifth Amendment right to have counsel present during questioning was violated when the police initiated further interrogation after defendant expressed his desire to contact an attorney and before that attorney was made available to him.

II.     Defendant's Sixth Amendment right to have the assistance of counsel was violated when the police refused to let the defendant make meaningful contact with his attorney and, absent a valid waiver for the assistance of counsel by the defendant, pressed on with interrogation which led to a polygraph test being administered and defendant making an inculpatory statement.

III.    Defendant was denied his constitutional right to testify in his own behalf under both the state and federal constitutions where neither defense counsel not the trial court advised him of this right and did not secure a valid waiver of the right from the defendant.

IV.     Defendant was denied his constitutional right to effective assistance of counsel under both the state and federal constitutions when counsel failed to advise defendant of his right to testify.

The Michigan Court of Appeals affirmed the conviction. *People v. Mariswamy*,

No. 228082 (Mich. Ct. App. Apr. 26, 2002).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. *People v. Mariswamy*, 467 Mich. 932 (2002).

Petitioner then filed a motion for relief from judgment in the trial court, raising these claims:

    I.      Should the defendant be granted an evidentiary hearing on his claims that he was denied his right to effective assistance of counsel and that he was in fact in custody at the time that he was transported to the Northville State Police Post?

    II.     Was defendant's confession unlawfully obtained when it was taken by the Ann Arbor Police Department without informing the defendant of his right to consular access in violation of Article 36 of the Vienna Convention on consular access?

The trial court denied the motion. *People v. Mariswamy*, No. 99-12382 (Washtenaw County Circuit Court July 18, 2006).

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. *People v. Mariswamy*, No. 279298 (Mich. Ct. App. Jan. 11, 2008); *People v. Mariswamy*, 482 Mich. 893 (2008).

Petitioner then filed this habeas corpus petition through counsel. He raises these claims:

    I.      Petitioner's confession was obtained in violation of his Fifth Amendment right to remain silent and was the product of an illegal arrest in violation of the Fourth Amendment.

    II.     Ineffective assistance of counsel.

III.    Petitioner was questioned in violation of The Hague Treaty.

**III.**

Petitioner's claims are reviewed against the standards established by the

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.

1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it

'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"

*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,

529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

permits a federal habeas court to 'grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court but unreasonably applies that

6

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(*quoting Williams*, 529 U.S. at 413).  However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision

must have been more than incorrect or erroneous.  The state court's application must have

been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see*

*also Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision."  *Harrington v. Richter*, __ U.S. __, 131 S. Ct.

770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).  "Section

2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in

the state criminal justice systems, not a substitute for ordinary error correction through

appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*

at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision.  *See*

*Williams,* 529 U.S. at 412.  Section 2254(d) "does not require citation of [Supreme Court]

cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as

7

neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.

### A.

In his first claim for habeas corpus relief, Petitioner argues that his Fifth Amendment rights were violated because police continued to question him after he invoked his right to counsel and that his

The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. In *Miranda v. Arizona*, the Supreme Court held that this prohibition against compelled self-incrimination requires that a custodial interrogation be preceded by advice that the putative defendant has the right to an attorney and the right to remain silent. 384 U.S.

8

436, 479 (1966).  The Court further held that if the putative defendant invokes his right to
counsel, "the interrogation must cease until an attorney is present."  *Id.* at 474.  In
*Edwards v. Arizona*, the Supreme Court "reconfirm[ed]" the rule established in *Miranda*,
that, when a suspect has invoked the right to have counsel present during custodial
interrogation the suspect may not be "subject to further interrogation by the authorities
until counsel has been made available to him, unless the accused himself initiates further
communication, exchanges, or conversations with the police."  451 U.S. at 484-85; *see
also United States v. Dupree*, 323 F.3d 480, 486 (6th Cir. 2003).  Further, after a suspect
has invoked his right to counsel, "a valid waiver of that right cannot be established by
showing only that he responded to further police-initiated custodial interrogation even if
he has been advised of his rights."  *Id.* at 484.  This rule "is designed to prevent police
from badgering a defendant into waiving his previously asserted *Miranda* rights."  *Davis*,
512 U.S. at 458 (internal quotation omitted).  A suspect need not "speak with the
discrimination of an Oxford don," but must be unambiguous.  *Id.* at 459.  This means that
a suspect "must articulate his desire to have counsel present sufficiently clearly that a
reasonable police officer in the circumstances would understand the statement to be a
request for an attorney."  *Id.*  "If the suspect's statement is not an unambiguous or
unequivocal request for counsel, the officers have no obligation to stop questioning him."
*Id.* at 452.

       In *Davis v. U.S.*, 512 U.S. 452 (1994), the Supreme Court concluded that the
defendant's statement "Maybe I should talk to a lawyer" was not an unequivocal request

for counsel. *Davis*, 512 U.S. at 462. Other cases have found similar language to be too equivocal to amount to an unambiguous request to speak to counsel, so as to require the police to cease their interrogation. *See Cornelison v. Motley*, 395 F. App'x 268, 274 (6th Cir. 2010) (concluding that habeas petitioner's comment "What if I want my lawyer present first?" was too ambiguous to require the police to terminate their interrogation); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (noting that defendant's statement during police interrogation that "it would be nice" to have an attorney was too ambiguously worded to require police to stop questioning defendant); *but see Abela v. Martin*, 380 F.3d 915, 926 (6th Cir. 2004) (statement "maybe I should talk to an attorney by the name of William Evans" was an unequivocal request for counsel where the suspect specifically named his attorney and gave the police officer the attorney's business card).

Petitioner filed a motion to suppress his confession on the ground that police continued to interrogate him after he invoked his right to counsel. The trial court conducted a hearing regarding Petitioner's motion. Two witnesses testified at the hearing: one of the investigating officers, Detective Sheikh, and Petitioner. Detective Sheikh testified that Petitioner came to the police station with friends at approximately 3:30 a.m. on October 15, 1999. Petitioner told Detective Sheikh that he had some information about a homicide. Detective Sheikh took Petitioner to a conference room where Petitioner stated that he was at the murder scene shortly after the murder occurred and then attempted to conceal his presence at the scene. After taking Petitioner's initial statement, Detective Sheikh realized that Petitioner had become a suspect in the murder

10

and advised him of his *Miranda* rights.  About fifteen to twenty minutes after advising

Petitioner of his *Miranda* rights, Detective Sheikh asked Petitioner to take a polygraph

test.  At that point, Petitioner asked Detective Sheik if he should call an attorney, call one

of his friends who was an attorney, or talk to his friends in the lobby.  Detective Sheikh

advised Petitioner that that was his decision.  Petitioner then asked to talk to his friends in

the lobby.  When Petitioner went to the lobby, none of his friends were there.  He then

asked to make a phone call.  Detective Sheikh allowed him to do so.  He was not certain,

but Detective Sheikh believed that he may have been calling his friend who is an attorney.

Petitioner made a phone call.  When Petitioner hung up the phone, he said, "I will take the

test."  Detective Sheikh testified that Petitioner never asked for an attorney and never

indicated that he did not want to talk to police.

Petitioner testified that he advised Detective Sheikh that he wanted to call an

attorney.  According to Petitioner, when he told Detective Sheikh that he was unable to

talk to his attorney and that the attorney would call back, Detective Sheikh refused to wait

for the attorney's return call and transported Petitioner to the state police headquarters so

that a polygraph test could be administered.  Petitioner further testified that, once at police

headquarters, he requested an attorney several times, but the officers continued to

question him.

The trial court denied the motion to suppress, finding the detective's testimony

more credible than Petitioner's.  The Court held that Petitioner understood his rights and,

although a native of India, had been speaking English for twenty-one years.  The trial

11

court concluded that officers were not obligated to cease questioning Petitioner where he stated that he wished to call friends, including one who was an attorney, but did not unambiguously request counsel. The court held that Petitioner was clearly advised that he could cease questioning at any time, understood that he could do so, and, nevertheless, proceeded to answer questions and did not ask for an attorney.

The Michigan Court of Appeals reviewed the trial court's decision under the standard established in *Miranda* and *Edwards*. The court of appeals deferred to the trial court's credibility determination and held that the trial court's finding that Petitioner did not communicate a desire to have a lawyer present was not erroneous and that the record did not call this finding into doubt. *Mariswamy*, slip op. at 7.

On habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct" unless shown otherwise by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption applies equally to implicit and explicit findings of fact. *Carey v. Myers*, 74 F. App'x 445, 448 (6th Cir. 2003) (*citing McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)). On habeas review, a federal court does not "redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). Accordingly, the Court must defer to the state court's finding that the detective's account of the circumstances preceding Petitioner's confession was credible and Petitioner's was not. Given this finding, the state court's decision that Petitioner did not unequivocally request an attorney was not contrary to or an unreasonable application of Supreme Court

12

precedent.

Additionally, to the extent that Petitioner argues that his statement was admitted in violation of the Fourth Amendment, that claim may not form the basis for habeas corpus relief.  The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."  *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich.2005).  This procedural mechanism is a motion to suppress, ordinarily filed before trial.  *See People v. Ferguson*, 376 Mich. 90, 135 N.W.2d 357, 358-59 (Mich.1965) (describing the availability of a pre-trial motion to suppress). Because Michigan provides a procedural mechanism for raising a Fourth Amendment claim, Petitioner may only demonstrate entitlement to relief if he establishes that

13

presentation of his claim was frustrated by a failure of that mechanism.  This he has not done.

Petitioner raised this issue on direct appeal.  The Michigan Court of Appeals addressed the issue at length and found no Fourth Amendment violation.  The Michigan Supreme court denied leave to appeal.

Petitioner was provided an opportunity for full and fair litigation of his Fourth Amendment claim in the Michigan courts.  Petitioner's disagreement with the state courts' conclusions on his Fourth Amendment claim does not render the state's procedural mechanism inadequate.  Therefore, Petitioner's Fourth Amendment claim is barred by the rule in *Stone v. Powell*.

## B.

In his second claim, Petitioner argues that his attorney was ineffective in failing to: (i) move to suppress Petitioner's confession as the fruit of an illegal arrest; (ii) consider the possibility of Petitioner testifying; (iii) discuss trial strategy; (iv) argue that the confession was obtained in violation of the Hague Treaty; (v) consider presenting expert testimony regarding Petitioner's state of mind at the time of the confession; and (vi) require the production of the polygraph examiner at the *Walker* hearing.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

15

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at __, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at __, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with

16

> unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

First, Petitioner argues that trial counsel was ineffective in failing to secure suppression of Petitioner's confession as the fruit of an illegal arrest.  "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The Michigan Court of Appeals held that Petitioner failed to establish that a motion to suppress Petitioner's statement as the fruit of an illegal arrest would have been successful.  The state court held, first, that Petitioner was not seized because he was never told that he was not free to leave, he was voluntarily cooperating with the police, and there was no evidence that he submitted to questioning based on physical force or show of authority by the police.  A person is seized when an officer "by means of physical force or show of authority, has in some way restrained [his] liberty," *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968), such that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988).  The Michigan Court of Appeals held

17

that, although police did not arrest defendant after his first volunteered admissions, they had probable cause to do so.  Moreover, the state court held that Petitioner's subsequent statements were voluntary and not the product of an illegal arrest.  Therefore, the sate court held that counsel was not ineffective in failing to advance an argument that would not have succeeded.  Because Petitioner has failed to show that this Fourth Amendment claim was meritorious, he has failed to show that trial counsel was ineffective in failing to file such a motion.  Moreover, he has failed to show that the state court's conclusion that Petitioner did not satisfy *Strickland's* prejudice prong was an unreasonable application of *Strickland*.

Next, Petitioner argues that his attorney was ineffective in failing to consider the possibility that Petitioner should testify.  The Michigan Court of Appeals denied this claim, holding that Petitioner had ample opportunity outside the presence of the jury to assert a right to testify in his own defense while the court was addressing jury instructions, including an instruction regarding Petitioner not testifying.  Petitioner failed to indicate any desire to testify, unawareness of this right, or disagreement with his attorney's decision.  The state court held that this indicated Petitioner's acquiescence to defense counsel's decision not to call him and a waiver of his right to testify.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed.  *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000).  A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify.  *United States v. Webber*, 208 F. 3d

18

545, 551-52 (6th Cir. 2000). In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both explain that he has a right to testify and ask him whether he wishes to waive that right. *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987). Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Webber*, 208 F. 3d at 551. Here, Petitioner did not alert the trial court at the time of trial that he wanted to testify. Thus, his failure to do so constitutes a waiver of this right. *Id.* As the state court noted, because the record is void of any indication by Petitioner that he was somehow prevented from testifying, Petitioner has not overcome the presumption that he willingly agreed not to testify or that his counsel rendered ineffective assistance. *Gonzales*, 233 F. 3d at 357.

Third, Petitioner alleges that his trial attorney failed to discuss trial strategy. Petitioner fails to provide any support for this argument other than the conclusory statement that counsel failed in this regard. "Conclusory allegations, without evidentiary support, do not provide a basis for habeas corpus relief." *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003).

The final three ineffective assistance of counsel claims have not been presented in state court. A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142

19

F.3d 313, 322 (6th Cir. 1998).  The exhaustion requirement is satisfied if a prisoner

"invok[es] one complete round of the State's established appellate review process,"

including a petition for discretionary review to a state supreme court.  *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999).  The petitioner bears the burden of showing that state

court remedies have been exhausted.  *Caver v. Straub,* 349 F.3d 340, 345 (6th Cir. 2003).

Petitioner's final three ineffective assistance of counsel claims were not presented

through one complete round of the state's established appellate review process.  No state

court remedy is available to Petitioner to properly exhaust these claims because he

already has filed one motion for relief from judgment in the state trial court and does not

argue that his claims fall within the narrow exception to the prohibition against filing

successive motions for relief from judgment in state court.  Where a petitioner "fails to

present his claims to the state courts and . . . is barred from pursuing relief there, his

petition should not be dismissed for lack of exhaustion because there are simply no

remedies available for him to exhaust."  *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir.

1995).  "[I]f an unexhausted claim would be procedurally barred under state law, that

claim is procedurally defaulted for purposes of federal habeas review."  *Alley v. Bell*, 307

F.3d 380, 385 (6th Cir. 2002).  Thus, in order to obtain review of his claims under § 2254

he must establish cause and prejudice to excuse his default.

To the extent that Petitioner asserts ineffective assistance of appellate counsel as

cause to excuse his defaulted claims, his argument lacks merit.  Ineffective assistance of

appellate counsel on direct review would not excuse Petitioner's failure to properly

20

exhaust these claims on collateral review in state court.  *Hannah*, 49 F.3d at 1196.  *See also Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (holding that a claim of ineffective assistance of appellate counsel is properly exhausted when it is raised at the first opportunity to do so-in a post-conviction motion for collateral relief in state court). Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence.  *Id*.  Thus, Petitioner must assert a constitutional error along with a claim of innocence.  To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt."  *Id.* at 327.  The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence.  In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial.  Instead, the emphasis on "actual innocence" allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence in light of all the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after trial.
>
> * * *
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.  It is not the district court's

21

> independent judgment as to whether reasonable doubt exists that the
> standard addresses; rather the standard requires the district court to make a
> probabilistic determination about what reasonable, properly instructed
> jurors would do.  Thus, a petitioner does not meet the threshold requirement
> unless he persuades the district court that, in light of the new evidence, no
> juror, acting reasonably, would have voted to find him guilty beyond a
> reasonable doubt.

*Id.* (internal quotation omitted).

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty.  Therefore, these claims are procedurally barred.

## C.

Finally, Petitioner argues that his rights under the Hague Treaty were violated. Petitioner has failed to present this claim in state court.  As discussed above, no remedy remains available to Petitioner in state court.  This claim, therefore, is procedurally defaulted unless Petitioner can establish cause and prejudice for the default or a miscarriage of justice.  Petitioner fails to allege cause for this default and, as discussed, he fails to show a miscarriage of justice.  Therefore, this claim is procedurally defaulted.

To the extent that Petitioner intended to assert a violation of the Vienna Convention on Consular Rights, a claim raised in state court, that claim is without merit. The Sixth Circuit has held that the Vienna Convention does not create an individual right for a detained foreign national to consult with diplomatic representatives of his nation enforceable by the federal courts.  *See United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001); *see also United States v. Garcia-Perez*, 190 F. App'x 461, 465-66 (6th Cir. 2006) (*citing Emuegbunam*).  *Accord Cardenas v. Dretke*, 405 F.3d 244 (5th Cir.

2:08-cv-14576-NGE-RSW   Doc # 10   Filed 06/29/11   Pg 23 of 24   Pg ID 1111

2005); *Mendez v. Roe*, 88 F. App'x 165 (9th Cir. 2004). The Supreme Court has not addressed whether the Vienna Convention confers individual rights enforceable in domestic courts. *See Medellin v. Texas*, 552 U.S. 491, 506 n.4 (2008) (assuming without deciding that the Vienna Convention creates judicially enforceable individual rights). Thus, the state court's denial of this claim is not contrary to or an unreasonable application of Supreme Court precedent, and this Court is bound by the Sixth Circuit's decision in *Emuegbunam*. Accordingly, Petitioner has failed to state a claim upon which habeas relief may be granted as to this issue.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

23

## VI.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 29, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager